AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been
filed in the U.S. District Court _____Middle District of Florida_____ on the following

☒ Trademarks or  ☐ Patents.  (  ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>**6:25-cv-1795-JSS-LHP** | DATE FILED<br>09/17/2025 | U.S. DISTRICT COURT<br>US District Court- Middle District- Orlando |
|---|---|---|
| | | |
| | | |

| PLAINTIFF<br><br>**Morgan Global, PLLC** | DEFENDANT<br><br>**Disney Enterprises, Inc.** |
|---|---|

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| See attached | | |

| CLERK<br>    ELIZABETH M. WARREN | (BY) DEPUTY CLERK<br>M Bean | DATE<br>September 18, 2025 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

MORGAN GLOBAL, PLLC,

     *Plaintiff,*

vs.

DISNEY ENTERPRISES, INC.,

     *Defendant.*

Civil Action No.

**JURY TRIAL
DEMANDED**

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, Morgan Global, PLLC ("Morgan & Morgan"), files this Declaratory Judgment Complaint ("Complaint") against Defendant, Disney Enterprises, Inc. ("Disney"), and alleges as follows based on knowledge of its own actions and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.  Morgan & Morgan brings this declaratory-relief action under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, seeking a declaration that its proposed advertisement, incorporating an adaptation of the 1928 animated short film "Steamboat Willie" ("Steamboat Willie") for which the U.S. copyright has expired, does not infringe any trademark rights or other intellectual property rights claimed by Disney and does not violate 15 U.S.C. § 1125(a) or any other provisions of the Lanham Act. A version of the proposed advertisement (the

1

"Advertisement") can be viewed at the following link:

https://docsend.com/view/q9x3bdin5vy9cst8.

2.   In pre-suit correspondence to Chief Legal and Compliance Officer Horacio Gutierrez, Esq. on July 15, 2025 ("Morgan Letter"), Morgan & Morgan provided Disney with a link to the Advertisement, and informed Disney of its intention to broadcast the Advertisement nationwide over television, online, and through social media channels. A copy of the Morgan Letter is attached as **Exhibit "A**."

3.   The Morgan Letter noted that the copyright in "Steamboat Willie" expired on January 1, 2024, and that the property has, since that date, entered the public domain. As noted in the Letter, the Advertisement includes prominent disclaimers (visual and verbal) that make clear to the public that there is no affiliation or connection between Morgan & Morgan, or the Advertisement, and Disney.

4.   Given the uncertainty over Disney's assertion of its intellectual property rights, notwithstanding the expiration of the "Steamboat Willie" copyright, Morgan & Morgan sought confirmation that Disney would not allege the Advertisement violated any copyright or trademark rights, or any other intellectual property rights, that Disney may currently claim in connection with "Steamboat Willie." *See* Exhibit A.

5.   The Morgan Letter concluded by asking Disney if it deems the broadcast of the Advertisement a violation of its intellectual property rights, and if so, to identify the bases for any such belief or claim. *See* Exhibit A.

6.   On July 29, 2025, Disney responded (the "Disney Response"), acknowledging receipt of the Morgan Letter to Mr. Gutierrez, inviting further communication with Gloria Shaw, Office of Counsel, and including a vague substantive response that referred to the expired U.S. copyright in the motion picture "Steamboat Willie (1928)." The Disney Response noted that Disney continued to hold certain related trademark rights. A copy of the Disney Response is attached as **Exhibit "B."**

7.   Rather than confirm whether Disney would take action against Morgan & Morgan for using the Advertisement, the Disney Response stated that it did not provide legal advice to third parties, and would not provide such advice in response to the Morgan Letter. *See* Exhibit B.

8.   The Morgan Letter had not requested legal advice, it sought confirmation that Disney would not allege the Advertisement violated Disney's intellectual property rights.

9.   In fact, Morgan & Morgan learned that Disney had filed an action in the Central District of California, on July 16, 2025, the day after the Morgan Letter, asserting intellectual property claims against a jewelry company whose designs

3

depicted characters from the "Steamboat Willie" cartoon. A copy of the Complaint, *Disney Enterprises, Inc. v. Red Earth Group Limited, d/b/a Satéur*, No. 2:25-cv-06469 (C.D. Ca. July 16, 2025), is attached as **Exhibit "C."**

10. Disney's history of aggressive enforcement of intellectual property rights, including recent trademark litigation against third parties using the same public-domain work, combined with Disney's refusal to disclaim an intent to engage in enforcement against Morgan & Morgan's proposed use, has created a real, immediate, and substantial controversy.

11. Morgan & Morgan faces a credible anticipation and threat of litigation that is causing ongoing business harm and chilling its lawful use of public-domain content.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. §1331 because this action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. §§ 1114, 1115.

13. Jurisdiction is also proper under 28 U.S.C. § 1338(a) and under 28 U.S.C. §§ 2201-2202.

14. Disney is subject to personal jurisdiction in Florida because it conducts substantial business in this State, has purposefully availed itself of the privilege of conducting activities here, and its conduct gives rise to this controversy.

4

15. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred here, and because Morgan & Morgan and Disney reside in this District.

## PARTIES

16. Plaintiff Morgan Global, PLLC is a professional limited liability company, having an address and a principal place of business at 20 North Orange Avenue, Suite 1600, Orlando, Florida, and is related to Morgan & Morgan, the country's largest personal injury law firm. Morgan & Morgan employs over 1,000 lawyers – licensed in all 50 states – and is well-known for its television, digital and outdoor advertising.

17. Defendant Disney Enterprises, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Burbank, California. Disney Enterprises, Inc. owns and licenses various intellectual property rights related to various Disney characters, including Mickey Mouse and Minnie Mouse and associated properties.

## FACTUAL ALLEGATIONS

18. The "Steamboat Willie" cartoon was first published in 1928 and is widely recognized in popular culture as the first appearance of the Mickey Mouse cartoon character before the public.

19. Disney's U.S. copyright for "Steamboat Willie" has expired, and the work is now in the public domain, free for anyone to use without license.

20. Mindful of the expiration of copyright, Morgan & Morgan created the Advertisement incorporating certain visual elements from "Steamboat Willie" in a manner consistent with its public domain status.

21. Morgan & Morgan is known for its ongoing, extensive and highly creative media advertising. As with its other advertising, Morgan & Morgan's Advertisement promotes the Morgan & Morgan law firm and its legal services, not goods or services that compete with any product or service of Disney.

22. The Advertisement includes express and prominent visual and verbal disclaimers of any affiliation, sponsorship, or endorsement by Disney.

23. Disney claims to own federal trademark registrations for certain names, designs, and characters portrayed in "Steamboat Willie," including for the Mickey Mouse and Minnie Mouse characters.

24. Disney has a well-documented history of aggressively enforcing its asserted trademark rights, including filing infringement suits against parties using depictions of "Steamboat Willie" characters despite their public domain status.

25. For example, on July 16, 2025, the day after Morgan & Morgan sent the Morgan Letter to Disney, Disney filed a trademark infringement and false designation of origin lawsuit in the United States District Court for the Central

District of California against a third party for selling goods that incorporated elements from "Steamboat Willie," even though the underlying copyright had expired and even though the defendant had disclaimed any connection to Disney. In paragraph 42 of that complaint, Disney alleged:

> The expiration of the U.S. copyright in *Steamboat Willie* does not give [Defendant] license to infringe Disney's continuing rights over its trademarks that identify Disney as the source of goods and services and to profit off the goodwill that Disney has built with the public over decades. As Disney has stated publicly, while copyright expired in the Steamboat Willie motion picture, Mickey Mouse will continue to play a leading role as a global ambassador for Disney

*See* Exhibit C, ¶ 42.

26. Despite Morgan & Morgan's attempts to confirm that Disney would refrain from seeking to enforce claimed intellectual property rights against Morgan & Morgan for its use of the Advertisement, Disney refused to disclaim any intention to sue Morgan & Morgan if it proceeded to broadcast the Advertisement.

27. Disney's refusal to disclaim enforcement, its history of aggressive litigation over substantially similar uses, and its recent lawsuit against a third party, create a reasonable apprehension that Disney will sue Morgan & Morgan if it proceeds with the planned use of the Advertisement.

28. As a result, Morgan & Morgan is presently and adversely affected by an actual, substantial controversy with sufficient immediacy and reality to warrant declaratory relief by this Court.

29. Morgan & Morgan has and will suffer actual damages by virtue of Disney's conduct.

30. In addition, Morgan & Morgan faces irreparable harm, including loss of marketing opportunities, chilled speech, and uncertainty affecting its business.

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY JUDGMENT OF
### NON-INFRINGEMENT OF TRADEMARK (15 U.S.C. § 1114)

31. Morgan & Morgan incorporates the allegations in Paragraphs 1-30 of the Complaint as though fully set forth herein.

32. Morgan & Morgan's Advertisement does not infringe any valid trademark rights claimed by Disney.

33. The "Steamboat Willie" cartoon elements used in the Advertisement are in the public domain, and Morgan & Morgan's services are unrelated to any goods or services offered by Disney.

34. No likelihood of confusion exists, particularly in light of Morgan & Morgan's express disclaimers and the nature of the parties' respective product and service offerings.

35. An actual justiciable controversy exists regarding whether Morgan & Morgan's Advertisement infringes Disney's trademarks.

36. Morgan & Morgan is entitled to a declaration that the Advertisement is lawful and does not infringe Disney's trademark rights.

## COUNT II
### DECLARATORY JUDGMENT OF NON-VIOLATION OF 15 U.S.C. § 1125(A), FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION

37. Morgan & Morgan incorporates the allegations in Paragraphs 1-30 of the Complaint as though fully set forth herein.

38. Morgan & Morgan's Advertisement does not falsely suggest sponsorship, endorsement, or affiliation with Disney.

39. Morgan & Morgan's use of the Advertisement is a lawful exercise of rights to use public domain works, with clear disclaimers to avoid any confusion.

40. An actual justiciable controversy exists as to whether Morgan & Morgan's Advertisement violates 15 U.S.C. § 1125(a).

41. Morgan & Morgan is entitled to a declaration that the Advertisement does not violate 15 U.S.C. § 1125(a).

## COUNT III
### DECLARATORY JUDGMENT OF NO TRADEMARK DILUTION – 15 U.S.C. § 1125(C);28 U.S.C. §§ 2201-2202

42. Morgan & Morgan incorporates the allegations in Paragraphs 1-30 of the Complaint as though fully set forth herein.

43. An actual, justiciable controversy exists between Morgan & Morgan and Disney concerning whether Morgan & Morgan's planned use of elements from the

"Steamboat Willie" cartoon in Morgan & Morgan's Advertisement would constitute trademark dilution under 15 U.S.C. § 1125(c).

44. Morgan & Morgan intends to broadcast the Advertisement incorporating visual elements from the "Steamboat Willie" cartoon, with clear and prominent disclaimers that Morgan & Morgan is not affiliated with, sponsored by, or endorsed by Disney.

45.    Disney claims to own certain famous trademarks allegedly associated with the "Steamboat Willie" characters and has a history of aggressively enforcing those trademarks, including against third parties who use the "Steamboat Willie" characters.

46.    Morgan & Morgan's use of such elements does not constitute "dilution by blurring" under 15 U.S.C. § 1125(c)(2)(B) because, a) the imagery used is taken solely from the original "Steamboat Willie" cartoon  and is now in the public domain and its use will not impair the distinctiveness of any valid mark owned by Disney; (b) the Advertisement will make no use of Disney's distinctive brand elements that are not part of the "Steamboat Willie" cartoon; and (c) the prominent disclaimers and overall context of the Advertisement make clear there is no association, sponsorship, or affiliation between Morgan & Morgan and Disney.

47.    Morgan & Morgan's use of such elements does not constitute "dilution by tarnishment" under 15 U.S.C. § 1125(c)(2)(C) because Morgan & Morgan's

Advertisement does not use Disney's trademarks or characters in an unwholesome, unsavory, or negative manner, and does not otherwise harm their reputation.

48.    Any similarity between Morgan & Morgan's Advertisement and Disney's marks arises from the lawful use of the "Steamboat Willie," public domain elements, which the dilution statute does not prohibit.

49.    Accordingly, Morgan & Morgan is entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that Morgan & Morgan's Advertisement does not dilute any famous trademark owned by Disney within the meaning of 15 U.S.C. § 1125(c).

## COUNT IV
### DECLARATORY JUDGMENT OF NON-VIOLATION OF COMMON LAW OR STATUTORY UNFAIR COMPETITION LAWS

50. Morgan & Morgan incorporates the allegations in Paragraphs 1-30 of the Complaint as though fully set forth herein.

51. Morgan & Morgan's Advertisement does not unfairly compete with or damage or harm Disney in any way.

52. Morgan & Morgan's Advertisement is not deceptive, unethical or illegal, nor does it seek to gain an unfair advantage over competitors.

53. Morgan & Morgan does not offer any of the products or services offered by Disney.

54. Morgan & Morgan and Disney are not in competition.

55. Morgan & Morgan's use of the Advertisement is a lawful exercise of rights to use public domain works, with clear disclaimers to avoid any confusion.

56. An actual justiciable controversy exists as to whether Morgan & Morgan's Advertisement violates common law or statutory unfair competition laws.

57. Morgan & Morgan is entitled to a declaration that the planned use of the Advertisement does not violate common law or statutory unfair competition laws.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Morgan & Morgan prays that this Court:

A. Declare that Morgan & Morgan's Advertisement does not infringe any trademark rights owned or asserted by Disney;

B. Declare that Morgan & Morgan's Advertisement does not violate 15 U.S.C. § 1125(a);

C. Declare that Morgan & Morgan's Advertisement does not dilute the distinctive quality of Disney's marks within the meaning of 15 U.S.C. § 1125(c);

D. Declare that Morgan & Morgan's Advertisement does not violate common law or statutory unfair competition law;

E.  Enjoin Disney from asserting trademark infringement or unfair competition claims against Morgan & Morgan based on the Advertisement;

F.  Declare Morgan & Morgan is the "prevailing party" in this action within the meaning of 15 U.S.C. § 1117(a).

G.  Award Morgan & Morgan its costs and reasonable attorneys' fees under 15 U.S.C. § 1117(a) or as otherwise permitted by law; and

H.  Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Morgan & Morgan requests a trial by jury for all issues so triable on its claims pursuant to Fed. R. Civ. P. 38(b) and 38(c).

Date:  September 17, 2025

<div style="margin-left: 40%;">

**MORGAN GLOBAL, PLLC**

20 N. Orange Ave.
Suite 1600
Orlando, Florida 32801
Telephone: 407.236.5974
Facsimile: 407.245.3349
dprosser@forthepeople.com

By:  *Damien H. Prosser*
Damien H. Prosser
Florida Bar No.: 17455

</div>

13

**MORGAN & MORGAN**

Via FedEx and Email
horacio.gutierrez@disney.com

<div align="right">Reply to Damien Prosser<br>Email: dprosser@forthepeople.com</div>

July 15, 2025

Horacio Gutierrez, Esq.
Chief Legal and Compliance Officer
The Walt Disney Company
500 South Buena Vista Street
Burbank, CA 91521

Re:    Morgan & Morgan
       *"Steamboat Willie" TV and Digital Advertisement*

Dear Mr. Gutierrez:

I am a partner with Morgan & Morgan. As you are probably aware, Morgan & Morgan is the country's largest personal injury law firm, employing over 1,000 lawyers—licensed in all 50 states—and is well-known for its TV, digital and outdoor advertising.

I write to make The Walt Disney Company ("Disney") aware that Morgan & Morgan intends to air a new advertisement that is an adaptation of the 1928 animated short film "Steamboat Willie." A version of the advertisement (the "Advertisement") can be viewed at the following link: MM_SBW-4x5_FullRes_062425_v11.mp4

Morgan & Morgan intends to broadcast the Advertisement nationwide over television, online, and through social media channels.

The copyright on "Steamboat Willie" expired on January 1, 2024, and the property has, since that date, entered the public domain. We believe that the Advertisement does not violate any of the copyright rights that Disney originally enjoyed in and to the property. As you will also note, the Advertisement includes prominent disclaimers (visual and verbal) that make clear there is no affiliation between Morgan & Morgan, or the Advertisement, and Disney. We therefore maintain that there is no likelihood any reasonable viewer would believe the Advertisement promotes any Disney products or services, originates from Disney, is sponsored or approved by Disney, or is in any way related to Disney. In brief, we are confident that the Advertisement does not violate any copyright or trademark rights, or any other intellectual property rights, that Disney may currently claim in connection with "Steamboat Willie."

Notwithstanding Morgan & Morgan's belief that the Advertisement is perfectly lawful and does not violate Disney's intellectual property rights, Morgan & Morgan wanted to afford Disney an opportunity to voice any objections it may have prior to the airing of the Advertisement.

---

20 North Orange Avenue, Suite 1600, Orlando, FL, 32801 | forthepeople.com

Exhibit A

Specifically, if Disney deems that broadcasting the Advertisement would violate any of its intellectual property rights, please let us know promptly and advise us of the bases.

Due to the time constraints inherent to a nationwide advertising campaign, please provide a response by no later than July 30, 2025. In the interim, should you have any questions, please feel free to contact me.

Very truly yours,

*Damien H. Prosser*

Damien H. Prosser

cc: Rafael Ribeiro, Esq. (rafael.ribeiro@disney.com)



Office of Counsel

July 29, 2025

**VIA ELECTRONIC MAIL**

Damien H. Prosser
Morgan & Morgan
20 North Orange Avenue
Suite 1600
Orlando, FL 32801
dprosser@forthepeople.com

      Re:     Morgan & Morgan "Steamboat Willie" TV and Digital Advertisement

Dear Mr. Prosser:

      I write to acknowledge receipt of your July 15, 2025 letter to Horacio Gutierrez, Senior Executive Vice President, Chief Legal and Compliance Officer, The Walt Disney Company. If you wish to have further communications on the issues raised in your letter, please send them to me.

      You refer to the expiration of the U.S. copyright in the motion picture *Steamboat Willie* (1928), as well as the fact that Disney continues to hold certain related trademark rights. Disney's policy is typically not to provide legal advice to third parties. Without waiver of any of its rights, Disney will not provide such advice in response to your letter.

      Very truly yours,

Gloria Shaw

.

Exhibit B

KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
ROSE LEDA EHLER (SBN 296523)
Rose.Ehler@mto.com
GRAHAM J. WYATT (SBN 342809)
Graham.Wyatt@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

SARAH E. WEINER (*pro hac vice forthcoming*)
Sarah.Weiner@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, DC 20001
Telephone:  (202) 220-1100

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., | Case No. 2:25-cv-06469 |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN** |
| vs. | |
| RED EARTH GROUP LIMITED, d/b/a SATÉUR, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Exhibit C

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

Plaintiff Disney Enterprises, Inc. ("Disney") alleges on knowledge as to its own acts, and otherwise on information and belief, as follows:

## **INTRODUCTION**

1.      Disney's MICKEY and MICKEY MOUSE word and device marks (collectively, "Mickey Mouse Trademarks") are among the most famous and instantly recognizable trademarks in the world.  For decades, Disney (including through its affiliates) has used the Mickey Mouse Trademarks to identify Disney's family-focused brand and the singular magic consumers associate with Disney's goods and services.  Disney's Mickey Mouse Trademarks provide consumers with assurance that the associated goods meet Disney's quality standards, and have Disney's approval and endorsement.

2.      Defendant Red Earth Group Limited ("Red Earth Group") is unlawfully trading on that consumer goodwill and misleading consumers for its own commercial gain.



3.      Red Earth Group is not and never has been authorized to use Disney's Mickey Mouse Trademarks in any way.  Nevertheless, Red Earth Group has chosen

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

to appropriate Disney's Mickey Mouse Trademarks to market cheap, imitation-diamond jewelry through an online storefront that Red Earth Group operates under the name "Satéur Paris."  The Satéur website sells more than a half-dozen pieces of Mickey Mouse-themed jewelry (collectively, "Infringing Satéur Mickey Jewelry"). Red Earth Group's marketing and packaging is replete with substantial, unauthorized use of infringing versions of Disney's Mickey Mouse Trademarks:






4.      This poses a significant problem, not just for Disney but also for its licensees and consumers in the market.  Disney maintains a substantial licensing

program through which it authorizes other parties to use the Mickey Mouse Trademarks in connection with a wide variety of goods and services. Disney maintains quality controls over its licensees' merchandise and the association of that merchandise with Disney. And consumers rely on the Mickey Mouse Trademarks to signal Disney's approval or endorsement, and therefore the quality, of associated goods.

5. Indeed, Red Earth Group admits that "Mickey Mouse" is "synonymous with the name Disney."[1] Its infringement of the Mickey Mouse Trademarks creates an obvious likelihood of consumer confusion. Compare, for example, one of Disney's Mickey Mouse device marks with Red Earth Group's product packaging:





*Disney's Mickey Mouse device mark*
Reg. App. No. 97668570 (Class 14)

*"Satéur® Mickey 1928 Classique Ring™" product packaging*

6. Red Earth Group's Infringing Satéur Mickey Jewelry attempts to cash in on the popularity of Disney's Mickey Mouse brand and to mislead consumers into believing that Red Earth Group is an authorized seller of authentic Disney

---

[1] *See* Satéur, *Celebrating a Century of Magic: The Satéur® Mickey 1928 Collection* (Jan. 22, 2024), https://www.sateur.com/blog-mickey-1928-collection/ [https://perma.cc/3PL2-LDZP] ("Mickey Mouse wasn't just a character; he was a revolution. His appearance in 'Steamboat Willie' in 1928 wasn't just the birth of a character but the birth of a vast universe of storytelling that would eventually become synonymous with the name Disney.").

merchandise.  Disney brings this action to protect its rights in the Mickey Mouse Trademarks, the interests of Disney's legitimate licensees, and the consumers who rely on the Mickey Mouse Trademarks to indicate the legitimacy and quality of associated goods.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, because Disney's claims arise under the Lanham Act, as amended, 15 U.S.C. §§ 1051 *et seq.*

8.    This Court has personal jurisdiction over Red Earth Group pursuant to Federal Rule of Civil Procedure 4(k)(1) and California Code of Civil Procedure § 410.10.  Red Earth Group has purposefully directed its actions toward the State of California and this District.  Red Earth Group is intentionally marketing and selling products in a manner that infringes Disney's trademarks.  And Red Earth Group is expressly aiming its actions at California, including by:  (a) marketing its products to consumers in California, including through promotional blog posts directed to such consumers[2]; (b) offering free delivery to residents of California and Los Angeles County; contracting with a third-party distributor based in and/or operating out of this District to distribute some or all of the infringing goods to purchasers in this State and in this District; and (c) selling at least two infringing items through the Satéur website to an agent of Disney located in this District in the regular course of business.  Red Earth Group is aware that its infringement of Disney's Mickey Mouse Trademarks harms Disney in the State of California and in this District, where Disney maintains its principal place of business.

---

[2] *See, e.g.*, Satéur, *Discover the Best Engagement Rings in Los Angeles* (Jan. 27, 2023), https://www.sateur.com/discover-the-best-engagement-rings-in-los-angeles/ [https://perma.cc/V6S6-7CSP] (purporting to provide "a list of some of the top places or locations to buy engagement rings in Los Angeles," including several brick-and-mortar stores that are presented as Satéur's peers).

9.      Alternatively, if this Court does not have jurisdiction over Red Earth Group pursuant to <u>Federal Rule of Civil Procedure 4(k)(1)</u>, then the Court has jurisdiction over Red Earth Group pursuant to Rule 4(k)(2).  If jurisdiction over Red Earth Group were lacking under Rule 4(k)(1), then Red Earth Group would not be subject to jurisdiction in any state's courts of general jurisdiction.  Red Earth Group has purposefully directed and promoted its infringing activities to the United States as a whole, including by:  (a) engaging in marketing and sales efforts that target consumers in the United States, including blog posts directed at U.S. consumers,[3] free delivery to the United States, advertising and sales deals invoking uniquely American holidays, advertising featured in U.S. publications that are promoted by and to U.S. citizens (such as Vogue, Cosmopolitan, and Esquire), and claims that its jewelry is "loved by celebrities," including American sports journalist Olivia Harlan Dekker; (b) offering its products directly for sale to customers within the United States through the Satéur website; (c) arranging with a California third-party distributor to ship some or all of its products to consumers in the United States; and (d) filing (but later withdrawing) a U.S. trademark application for the SATÉUR mark.

10.      Venue is proper in this District pursuant to <u>28 U.S.C. § 1391(b)</u> because a substantial part of the events giving rise to Disney's claims occurred in this District.

---

[3] *See, e.g.*, Satéur, *Best Engagement Rings in United States: The Ultimate Guide* (Jan. 17, 2023), https://www.sateur.com/best-engagement-rings-in-united-states-the-ultimate-guide/ [https://perma.cc/TC2L-QKYV]; Satéur, *Get the Perfect Fit: A Comprehensive Guide to Engagement Ring Sizes* (Jan. 4, 2023), https://www.sateur.com/get-the-perfect-fit-a-comprehensive-guide-to-engagement-ring-sizes/ [https://perma.cc/4SXN-V55S].

## THE PARTIES

### Plaintiff

11.     Plaintiff Disney Enterprises, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Burbank, California.

### Defendant

12.     Defendant Red Earth Group Limited is a corporation organized and existing under the laws of Hong Kong with its principal place of business in Hong Kong.  Red Earth Group maintains an "office" in the United States.

13.     Red Earth Group owns and operates Satéur.com, an online retail sales website that markets, sells, and distributes low-priced jewelry with lab-grown diamonds, moissanite, and synthetic gemstones.  Red Earth Group oversees the design, manufacturing, marketing, and distribution of all products sold on the Satéur website, including products that infringe Disney's Mickey Mouse Trademarks.

14.     Satéur is not a standalone company, but rather a trademark of Red Earth Group.  The Satéur website falsely claims that SATÉUR is a registered mark in the United States.  Although Red Earth Group applied to register the SATÉUR mark in the United States, Red Earth Group later abandoned that application.

## BACKGROUND FACTS

### Disney's Trademark Rights

15.     Disney owns the Mickey Mouse Trademarks, which include common law rights, trade names, registrations, and/or registration applications that incorporate and/or refer to Mickey Mouse and distinctive elements associated with Mickey Mouse.

16.     Disney owns numerous federal registrations covering the Mickey Mouse Trademarks, including the registrations listed in **Exhibit A**.  For example, Disney has registered both the MICKEY MOUSE word mark and the iconic three-circle mouse ear device mark for use in connection with jewelry and watches under

U.S. Registered Trademark Nos. 3007745 and 5670367.  Disney's U.S. Trademark Application No. 97668570 depicts Mickey Mouse's full body in color and covers the class of goods that includes jewelry, jewelry boxes, and jewelry cases.

 

17.     Disney also owns common law trademark and trade dress rights in the Mickey Mouse Trademarks.  For example, Disney and its affiliates often use the Mickey Mouse Trademarks as marks in connection with online point of sale displays, hangtags, and packaging to identify Disney as the source of the goods. Disney and its affiliates have consistently used each of the following Mickey Mouse Trademarks in commerce throughout the United States since at least 2023.



*Disney's Disney Store online point-of-sale display*

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN



*Disney's product tag*



*Disney's product hangtag*

18.     As a result of widespread advertising and sales by Disney, its affiliates, and their respective licensees, together with longstanding consumer recognition of Mickey Mouse as synonymous with the Disney group of companies, the Mickey Mouse Trademarks are widely recognized as source identifiers for products and services authorized by Disney.  Each of the Mickey Mouse Trademarks is inherently distinctive and/or has acquired secondary meaning in the minds of consumers.

19.     Disney holds the exclusive right to develop, manufacture, market, license, and sell products featuring the Mickey Mouse Trademarks.  Disney exercises those rights in numerous ways, including by licensing the Mickey Mouse Trademarks for use in connection with jewelry products and related merchandise for sale through online retailers:

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Disney's Mickey Mouse 18K Gold-Plated White Topaz Ring (The Bradford Exchange)*



*Mickey Mouse Profile Earrings by CRISLU (Disney Store)*



*Disney Diamond Mickey Mouse 18" Pendant Necklace (Macy's)*



*Disney's Mickey Mouse Black & White Diamond Heart Necklace (Kay Jewelers)*

20. Authorized merchandising and licensing of the Mickey Mouse Trademarks is subject to Disney's control over the quality of the licensed goods.

21. Disney sells (or licenses for sale) products bearing the Mickey Mouse Trademarks in all 50 states, including California.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

## __Red Earth Group's Business Model__

22.  The Satéur website purports to sell "smart luxury" jewelry at "1% of the price" of real diamond jewelry.[4]  For most pieces, a consumer may choose between a lab-grown "Satéur Moissanite" stone or a "Satéur Gems®" stone, which Red Earth Group describes as a "trademarked diamond simulant" "developed by Satéur."[5]  The Satéur website provides no further information about how Red Earth Group "developed" its faux diamond, nor what goes into its purportedly "exclusive formula."[6]

23.  Although the Satéur website lists several "global offices" (including one in the United States), it has no retail showrooms.[7]  Rather, Red Earth Group appears to offer its products for sale only through the Satéur website.[8]

## __Red Earth Group's Infringing Satéur Mickey Jewelry__

24.  Most of the Mickey Mouse-themed jewelry sold on the Satéur website is audaciously marketed as part of Red Earth Group's "Satéur® Mickey 1928 Collection" (the "Mickey 1928 Collection").  Red Earth Group describes its Mickey 1928 Collection as a limited-edition collection that was launched to "honor" Disney's 1928 animated short film *Steamboat Willie*, and the expiration of the U.S.

---

[4] *See* Satéur, *About Satéur*, https://sateur.com/pages/about-sateur [https://perma.cc/G9Y3-QADY] (last visited July 14, 2025).

[5] *See, e.g.*, Satéur, *Satéur Destinée Ring™*, https://sateur.com/products/ring?variant=51014303023443 [https://perma.cc/9SDC-XNCS] (last visited July 14, 2025).

[6] *See id.*

[7] *See* Satéur, *Contact Us*, https://sateur.com/pages/contact-us [https://perma.cc/8YGX-F7CG] (last visited July 14, 2025).

[8] Until recently, the Satéur website also featured fake images of non-existent showrooms, and claimed that the company was started by "Felix Francois," who was "[b]orn into a family that has specialized in fossils and gemstones since 1989." In reality, "Felix Francois" appears to be a French-inspired pseudonym for Red Earth Group's founder, Felix Kar Yue Wong.

copyright in the film, and as a "a celebration of nearly a century of joy, innovation, and magic that Mickey Mouse represents."[9]  Most items in the Mickey 1928 Collection are on "sale" for somewhere between $135 and $300, depending on the type of synthetic stone selected for the item.

25.     The centerpiece of the Mickey 1928 Collection is a ring marketed as the "Satéur® Mickey 1928 Classique Ring™."  This ring features a three-dimensional Steamboat Willie charm, wherein the character is depicted in a seated position on the band, holding a synthetic stone.




*Classique Ring top view*



*Classique Ring side view*

26.     Red Earth Group appears to use the same product packaging for all items within the Mickey 1928 Collection.  That packaging makes substantial use of Disney's Mickey Mouse Trademarks.  Both the outer and inner jewelry boxes are decorated with an image of Mickey Mouse's face.  Each box is stamped with the phrases "Satéur® Mickey 1928 Collection" and MICKEY THE JEWELER, the latter of which appears in the same font that Disney has long used in connection with Mickey Mouse-branded products.  And each item comes with a "certificate of authenticity," which is decorated with a full-body image of Mickey Mouse, the

---

[9] Satéur, *Celebrating a Century of Magic: The Satéur® Mickey 1928 Collection* (Jan. 22, 2024), https://www.sateur.com/blog-mickey-1928-collection/ [https://perma.cc/3PL2-LDZP].

phrases "Satéur® Mickey 1928 Collection" and MICKEY THE JEWELER, and a holographic seal bearing Mickey Mouse's face.  According to Red Earth Group, these product packaging materials are "[i]nspired by the whimsy and wonder of Mickey's world."[10]



*Outer packaging*



*Inner packaging*



*Inner box detail*



*Certificate of authenticity detail*

27.     In addition to the Mickey 1928 Collection, Red Earth Group also markets an offshoot "Satéur® 1928 Mickey Voyager Necklace" (the "Mickey Voyager Necklace"):  a pendant necklace featuring an artificial gemstone and a

---

[10] Satéur, *Behind the Scenes: Crafting the World's Most Iconic Mickey Engagement Ring* (Jan. 24, 2024), https://www.sateur.com/crafting-mickey-engagement-ring/ [https://perma.cc/4VZX-P6XB].

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

Steamboat Willie charm, wherein the character is depicted in a forward-facing stance and wearing a baseball cap bearing the SATÉUR mark.




*Mickey Voyager Necklace (dark background)*          *Mickey Voyager Necklace (light background)*

28.     Like the packaging for the Mickey 1928 Collection, packaging for the Mickey Voyager Necklace makes substantial use of the Mickey Mouse Trademarks. The outer box is decorated with a full-body image of Mickey Mouse and is stamped with the phrase "1928 Mickey Voyager." In addition to the Mickey Voyager Necklace, each box also contains a "certificate of authenticity" (decorated with the same image of Mickey Mouse as appears on the outer box) and a "handcrafted Mickey figure," which the Satéur website describes as "our first collectible."

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN





*Mickey Voyager Necklace outer packaging*    *Mickey Voyager "Mickey figure"*

29.    Marketing materials included within the packaging for the Mickey Voyager Necklace indicate that Red Earth Group plans to expand its "Mickey Voyager" collection in the future.

30.    Red Earth Group's online marketing materials extensively trade on the Mickey Mouse Trademarks and the Disney brand.  Until very recently, the landing page for the Satéur website prominently featured products and packaging from the Mickey 1928 Collection and promised "Magic in Every Carat," a word generally associated with Disney and the experience people have when engaging with this long-standing and established entertainment company's offerings—such as the Walt Disney World theme parks (the "Most Magical Place on Earth"), including Magic Kingdom, and the Disney Cruise Line ("Where Magic Meets the Sea"), including the Disney Magic cruise ship.[11]  The Satéur website landing page currently features the Mickey 1928 Collection under a "Collections You'll Love" banner.

---

[11] MAGIC KINGDOM and DISNEY MAGIC are also registered trademarks of Disney Enterprises, Inc.





31.     Red Earth Group also frequently promotes its Infringing Satéur Mickey Jewelry on the Satéur "Sale" page, which appears to change with the season but often makes use of the Mickey Mouse Trademarks.  In addition to Infringing Satéur Mickey Jewelry, the "Sale" page regularly lists a variety of other, non-Mickey Mouse-themed items that are described as a "Mickey" Sale.



Satéur® Mickey 1928 Collection Sale

### Red Earth Group's Unauthorized Use of the Mickey Mouse Trademarks in its Marketing and Packaging

32.     Red Earth Group's marketing and packaging of its Infringing Satéur Mickey Jewelry infringes Disney's trademark rights in order to profit off Disney's intellectual property and positive brand associations.  Red Earth Group uses confusingly similar (and sometimes identical or substantially similar) versions of Disney's Mickey Mouse Trademarks throughout its marketing and product packaging materials in a manner that is likely to confuse consumers about the source or sponsorship of the Infringing Satéur Mickey Jewelry offered on the Satéur website.  Red Earth Group obviously intends to capitalize off Disney's goodwill and iconic Mickey Mouse Trademarks.

33.     Red Earth Group's recurring use of "Mickey" in its marketing, advertising, and product packaging infringes Disney's standard character word marks in MICKEY, MICKEY MOUSE, and MICKEY AND FRIENDS, and its

stylized character word marks MICKEY MOUSE and DISNEY MICKEY AND FRIENDS (collectively, "MICKEY word marks").

| Disney's Marks | Examples of Satéur's Infringing Uses |
|---|---|
| MICKEY<br><br>MICKEY MOUSE<br><br>MICKEY AND FRIENDS | Satéur® Mickey 1928 Collection<br>Satéur® Mickey 1928 Classique Ring™<br>Satéur® Mickey 1928 Classique Ébène Ring™<br>Satéur® Mickey 1928 Classique Necklace<br>Satéur® Mickey 1928 Lunaire Necklace<br>Satéur® Mickey 1928 Classique Earrings<br>Satéur® 1928 Mickey Voyager Collection<br>Satéur® 1928 Mickey Voyager Necklace<br>Mickey The Jeweler<br>Various other uses of "Mickey" in advertisements and marketing, including "Mickey Sale," "Mickey's Sale," and "MICKEY" discount codes |
|  |  |

34.    Red Earth Group's combination of its "Satéur®" mark with Disney's MICKEY word marks exacerbates the confusion.  Consumers are accustomed to purchasing official merchandise from Disney that is co-branded with licensees.  For example, Disney and Kate Spade co-branded a line of Mickey and Minnie Mouse jewelry, "Disney X Kate Spade."  Customers accustomed to similar authorized

goods will likely view the co-location of "Satéur®" and "Mickey" as indicating that Red Earth Group is affiliated with Disney.





*Disney X Kate Spade co-branding*                    *Disney X Gucci co-branding*

35.     Red Earth Group also uses Disney's Mickey Mouse device marks across its marketing and product packaging materials.  This unauthorized use infringes Disney's registered Mickey Mouse device marks, as well as Disney's unregistered common-law Mickey Mouse Trademarks.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

| Disney's Marks | Examples of Satéur's Infringing Uses |
|---|---|
|  | <br>*Mickey 1928 Collection packaging* |
|  | <br>*Mickey 1928 Collection Certificate of Authenticity* |
|  | <br>*"Mickey" Sale page* |

36.     Red Earth Group is intentionally trying to confuse consumers about the source and/or sponsorship of its Infringing Satéur Mickey Jewelry.  For example, Red Earth Group expressly states that it is marketing its Infringing Satéur Mickey Jewelry to "Disney enthusiasts."[12]  The overall impression of the Infringing Satéur

---

[12] Satéur, *Celebrating a Century of Magic: The Satéur® Mickey 1928 Collection* (Jan. 22, 2024), https://www.sateur.com/blog-mickey-1928-collection/#a-tribute-to-the-original-the-sateur-mickey-1928-collection [https://perma.cc/X85R-KUEA].

1  Mickey Jewelry sold by Red Earth Group suggests, at a minimum, a partnership or

2  collaboration with Disney.  This adds to the likelihood of consumer confusion about

3  whether Disney is the source of and/or has approved or sponsored the goods Red

4  Earth Group sells on its Satéur website.

5  **<u>Red Earth Group's Appropriation for the Purpose of Promoting Its Brand</u>**

6      37.    Red Earth Group also uses the Mickey Mouse Trademarks to promote

7  its overall Satéur brand and to foster confusion between that brand and Disney's

8  well-known and immensely popular brand.  Red Earth Group uses confusingly

9  similar (and sometimes identical or substantially indistinguishable) versions of

10  Disney's Mickey Mouse Trademarks across the Satéur website.  Red Earth Group

11  has even used versions of Disney's Mickey Mouse Trademarks on the *first page* of

12  the Satéur website—the very first image that consumers see.



23      38.    It is apparent from Red Earth Group's website design that it uses the

24  MICKEY, MICKEY MOUSE, and DISNEY word marks as keywords in third-party

25  search engine optimization for the purpose of having Red Earth Group's products

26  appear in search results when customers conduct searches for authorized products

27  using those keywords.

28

39.     Red Earth Group also has used MICKEY, MICKEY MOUSE, and DISNEY in promotional social media posts, such as on TikTok, Instagram, Facebook, and Pinterest, for the purpose of appearing in users' search results.  These unauthorized uses drive more traffic to Red Earth Group's Satéur website.



COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

*Note: Yellow Highlight Added by Disney*

40.     Red Earth Group asserts trademark rights in "Satéur's Mickey The Jeweler™."  Red Earth Group describes "Mickey the Jeweler" as "more than just a figure; he embodies the craftsmanship and artistry inherent *in every piece of Satéur jewelry*."[13]  Red Earth Group therefore intends to present Mickey Mouse as its own brand identifier for its jewelry merchandise—not limited to the Infringing Satéur Mickey Jewelry—and to trade on the recognizability of the Mickey Mouse Trademarks and consumers' affinity for Disney and *its* iconic ambassador Mickey Mouse.

---

[13] Satéur, *Behind the Scenes: Crafting the World's Most Iconic Mickey Engagement Ring* (Jan. 24, 2024), https://www.sateur.com/crafting-mickey-engagement-ring/ [https://perma.cc/4VZX-P6XB] (emphasis added).

41.     Red Earth Group also uses the Mickey Mouse Trademarks to market its *other*, non-Mickey Jewelry products.  For example, Red Earth Group has used both the word "Mickey" and Disney's three-circle mouse ear device mark in promoting sales that apply to nearly all products sold on the Satéur website.  *See* ¶¶ 31, 33, 35, *supra*.  Red Earth Group thus falsely associates Disney's marks and brand with Red Earth Group's products.

42.     Red Earth Group's framing of its Infringing Satéur Mickey Jewelry as justified by expiration of the U.S. copyright in *Steamboat Willie* is another ruse designed to mislead consumers.  The expiration of the U.S. *copyright* in *Steamboat Willie* does not give Red Earth Group license to infringe Disney's continuing rights over its *trademarks* that identify Disney as the source of goods and services and to profit off the goodwill that Disney has built with the public over decades.  As Disney has stated publicly, while copyright expired in the *Steamboat Willie* motion picture, Mickey Mouse will continue to play a leading role as a global ambassador for Disney, including through merchandise.

### Harm to Plaintiff and Consumers

43.     Red Earth Group's unauthorized use of the Mickey Mouse Trademarks in its product packaging and online marketing materials harms Disney by interfering with Disney's legitimate product and licensing businesses.  Licensees recognize the value of the Mickey Mouse Trademarks and pay Disney fair market value to use those marks.  Red Earth Group, meanwhile, pays Disney nothing to do the same and, thus, directly competes with Disney and its licensees without paying to use these valuable marks.

44.     Red Earth Group's appropriation of the Mickey Mouse Trademarks threatens to undermine Disney's goodwill and reputation in the consumer products market.  Consumer perception of Disney's brand will be affected by consumers' impressions of and associations with Red Earth Group and the Satéur website.  Because licensees regularly pay Disney to use the Mickey Mouse Trademarks, and

1   because Disney takes steps to ensure the quality and lawful production of those

2   licensed products, consumers expect that the items they purchase with the Mickey

3   Mouse Trademarks will be of high quality and that production elements will not be

4   unlawful or exploitative.  The jewelry sold on the Satéur website does not meet

5   Disney's quality standards.  For example, customers have filed complaints with the

6   Better Business Bureau against Satéur, which has an average customer rating of

7   1.25/5.  Representative customer complaints include: "not good quality and looked

8   extremely fake"; "This is a Scam if I have ever seen one"; "Had I known Sateur is

9   misleading their clients, I would not have made the purchase"; "This feels like a

10   huge scam and I hope other Americans do not get tricked on their site"; and "This is

11   FRAUD and I want my money back."[14]

12       45.   In addition, by confusing consumers into believing, incorrectly, that the

13   products sold on the Satéur website are associated with or sold, licensed, or

14   authorized by Disney, Red Earth Group's unauthorized use of the Mickey Mouse

15   Trademarks has very likely caused Disney and/or its licensees to lose sales that they

16   otherwise would have made to consumers seeking genuine Mickey Mouse-themed

17   merchandise.

18       46.   By misleading consumers into thinking that the products they buy from

19   the Satéur website are associated with Disney, and then distributing poor quality

20   products with bad customer service, Red Earth Group harms Disney, its authorized

21   licensees, and consumers.  Those harms are irreparable, and they will continue to

22   compound so long as Red Earth Group continues to use the Mickey Mouse

23   Trademarks without authorization.

24

25   _____

[14] Better Business Bureau, *Sateur Customer Reviews*,

26   https://www.bbb.org/us/az/mesa/profile/online-retailer/sateur-1126-

1000066537/customer-reviews (last visited July 14, 2025); Better Business Bureau,

27   *Sateur Complaints*, https://www.bbb.org/us/az/mesa/profile/online-retailer/sateur-

28   1126-1000066537/complaints (last visited July 14, 2025).

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

47.     In sum, Disney brings this action to enforce its clear trademark rights and put an end to Red Earth Group's brazen infringement.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

48.     Disney repeats and realleges all of the allegations contained in Paragraphs 1 through 47, inclusive, as though set forth herein in full.

49.     Disney is the owner of the exclusive rights to the Mickey Mouse Trademarks, including but not limited to the federal registrations included in Exhibit A.  Each of the trademark registrations relating to the Mickey Mouse Trademarks is in full force and effect.  Many of Disney's asserted registered marks are also incontestable.

50.     Red Earth Group has used and continues to use in commerce unauthorized reproductions, copies, and/or colorable imitations of registered Mickey Mouse Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of its goods.  This use is likely to cause confusion, mistake, and/or deception among consumers.  Red Earth Group is therefore liable to Disney for infringement of the Mickey Mouse Trademarks pursuant to 15 U.S.C. § 1114.

51.     Red Earth Group's use of reproductions, copies, and/or colorable imitations of the Mickey Mouse Trademarks, without Disney's consent or authorization, has been and continues to be intentional and willful within the meaning of 15 U.S.C. §§ 1114 and 1117.

52.     Red Earth Group's conduct has caused and will continue to cause irreparable injury to Disney, for which Disney has no adequate remedy at law.  As such, Disney seeks injunctive relief pursuant to 15 U.S.C. § 1116, as well as actual damages and Red Earth Group's profits or statutory damages pursuant to 15 U.S.C. § 1117, and reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C. § 1117(a).  Further, the conduct has caused monetary damages in an amount to be determined at trial, and because Red Earth Group's infringing conduct

1  has been and continues to be willful, Disney is entitled to an enhanced damages

2  award pursuant to 15 U.S.C. § 1117(a).

3  <u>**SECOND CLAIM FOR RELIEF**</u>

4  **(False Designation of Origin in Violation of 15 U.S.C. § 1125(a))**

5  53.    Disney repeats and realleges all of the allegations contained in

6  Paragraphs 1 through 47, inclusive, as though set forth herein in full.

7  54.    As a direct result of Disney's longstanding use, sales, advertising, and

8  marketing, the Mickey Mouse Trademarks have acquired a distinctive meaning

9  among the consuming public, who have come to identify the Mickey Mouse

10 Trademarks exclusively with Disney and its affiliated companies, and with the

11 goods and services offered by Disney.

12 55.    Red Earth Group's unauthorized use of the Mickey Mouse Trademarks

13 constitutes the use of false or misleading designations of origin, and/or the making

14 of false or misleading representations of fact, in violation of 15 U.S.C. § 1125(a), in

15 that, among other things, such use is likely to cause confusion, deception, and/or

16 mistake as to the source, approval, connection, association, or sponsorship of the

17 goods and services distributed, sold, and offered for sale by Red Earth Group

18 bearing infringements of the Mickey Mouse Trademarks.

19 56.    Red Earth Group's acts complained of herein are willful and intentional

20 within the meaning of 15 U.S.C. §§ 1114 and 1117, and these acts have been and

21 continue to be undertaken with the intention of trading upon the valuable goodwill

22 built up by Disney or otherwise injuring Disney.

23 57.    Red Earth Group's conduct has caused and will continue to cause

24 irreparable injury to Disney, for which Disney has no adequate remedy at law.  As

25 such, Disney seeks injunctive relief pursuant to 15 U.S.C. § 1116, as well as actual

26 damages and Red Earth Group's profits pursuant to 15 U.S.C. § 1117(a), and

27 reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C.

28 § 1117(a).  Further, the conduct has caused monetary damages in an amount to be

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

determined at trial, and because Red Earth Group's conduct has been and continues to be willful, Disney seeks an enhanced damages award pursuant to <u>15 U.S.C. § 1117(a)</u>.

## **PRAYER FOR RELIEF**

WHEREFORE, Disney prays for judgment against Red Earth Group as follows:

1. That Red Earth Group, its officers, agents, servants, employees, and any person in active concert or participation with it be preliminarily and permanently enjoined and restrained from using the Mickey Mouse Trademarks or any reproduction, counterfeit, copy, or colorable imitation of the Mickey Mouse Trademarks in connection with the distribution, advertising, offer for sale, and/or sale of merchandise not the genuine products of Disney.

2. That Red Earth Group, its officers, agents, servants, employees, and any person in active concert or participation with it be preliminarily and permanently enjoined and restrained from otherwise infringing the Mickey Mouse Trademarks and/or damaging Disney's goodwill.

3. That Red Earth Group, its officers, agents, servants, employees, and any person in active concert or participation with it be preliminarily and permanently enjoined and restrained from assisting, aiding, or abetting any other person or business entity in engaging in or performing any infringement of the Mickey Mouse Trademarks.

4. That Disney be awarded its damages as well as profits realized by Red Earth Group by reason of Red Earth Group's unlawful acts herein alleged, in amounts to be proven at trial, and that the amount of damages for infringement of the Mickey Mouse Trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

5. In the alternative to actual damages and profits, at Disney's election, that Disney may be awarded statutory damages as may be proper under 15 U.S.C. § 1117.

6. That Disney be awarded its costs and reasonable attorneys' fees incurred in this action.

7. That Disney be awarded pre-judgment interest on its judgment.

8. That Disney have such other and further relief as the Court may deem equitable, proper, and just.

DATED: July 16, 2025                    MUNGER, TOLLES & OLSON LLP


                                        By: _____/s/ Kelly M. Klaus_____
                                            Kelly M. Klaus

                                        *Attorneys for Plaintiff Disney*
                                        *Enterprises, Inc.*

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

1

# **DEMAND FOR JURY TRIAL**

2         Pursuant to <u>Federal Rule of Civil Procedure 38(b),</u> Disney hereby demands a

3  jury trial in this action.

4

5  DATED:  July 16, 2025           MUNGER, TOLLES & OLSON LLP

6

7

8                     By:       */s/ Kelly M. Klaus*
                          Kelly M. Klaus

9

10                   *Attorneys for Plaintiff Disney*
                   *Enterprises, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Morgan Global, PLLC | Disney Enterprises, Inc. |

**(b)** County of Residence of First Listed Plaintiff    Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Orange
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Morgan & Morgan, P.A.
20 North Orange Ave

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [x] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 2201-2201

Brief description of cause:
Declaratory Judgment of Non-Infringement (Trademark 15 USC 1114), Declaratory Judgment (Non-Violation of 15 USC 1125 (False Designation of

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Injunction

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
9/17/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Damien Prosser

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____